Shaw C. J.
The facts are somewhat imperfectly stated in the present case. Several corrections and amendments were made by consent, during the argument; but it does not distinctly appear, whether there was any by-law of the bank requiring its officers to issue certificates to stockholders. But as it is a regulation common to all banks, or nearly all, and as the contrary does not appear, we think it is to be presumed that stockholders are entitled to the usual and common evidence of that kind of property, and therefore if the plaintiff had a valid title to the shares, she had a good right to a certificate.[1]
The question therefore is, whether the plaintiff has established a good and valid title to the shares in the stock of this bank, of which she demanded a certificate. It appears by the facts agreed, that such a demand was made by the plaintiff, and that the officers of the bank refused to issue such certificate, on the ground that she bad no title, but on the contrary, that the bank itself had a better title ; and the bank now defend the action on the same ground, thereby affirming and adopting the acts of their agents.
The plaintiff claims by attachment and sale on execution of the shares in controversy, as the property of Francis G. Macy, *428 her debtor, and it is agreed that the attachment and sale were regular afid conformable to the statute, and that the plaintiff was the purchaser.
It is the policy of our laws, to make all property, as far as • practicable, liable on legal process for the payment of debts. The St. 1804, c. '83, [see Revised Stat. c. 97, § 36,] providing for the sale of shares in incorporated companies, was assumed in the argument to apply to banks, and if so, a sale conformably to the statute passes the right of property to the purchaser, provided the debtor had shares liable to be attached and taken on execution. In Titcomb v. Union M. & F. Ins. Co., 8 Mass. R. 333, a doubt was expressed by Mr. Justice Sewall, whether this statute extends to banks. But it was not then necessary to decide the question, because the act of incorporation, being of later date than the general act, contained special provisions in regard to the attachment and sale of shares ; and it was held, that whether such general statute would apply or not, in ordinary cases, yet the'special subsequent provisions in the act of incorporation would suspend, and pro tanto repeal the general statute. But as the act in terms extends to shares in incorporated companies, and as neither the act incorporating the defendant bank, nor that incorporating the State bank, which is referred to and made part of this act of incorporation, provides any mode of attachment, the general statute must be held to apply.
It appears that Macy, the plaintiff’s debtor, vas a subscriber for ninety shares in the capital stock of the bank ; that on January 6th, 1826, he paid in cash $ 2750 • towards the ninety shares, and on the same day drew a bill of exchange on time, for $ 4637-62, being the residue of the sum then payable on account of the ninety shares. As collateral security for the payment of this draft, an assignment of shares' was made, as hereafter stated. This draft was in fact never paid ; but as against third persons, the' principle adopted in Massachusetts must be held to apply, that the giving of a negotiable instrument, is primo facie to be deemed a payment; and this presumption is strengthened in the present case, by the fact, that collateral security was taken. As to the subsequent instalment of 20 per cent, the case finds that it was not payable till afler *429 the attachment, and that the amount was seasonably tendered by the plaintiff.
Whether the instalments were fully paid in, within the time limited by the act of incorporation, or whether there was any forfeiture which the government might have enforced, we think wholly immaterial to the present inquiry.
Here then Macy is shown to have been a proprietor of the ninety shares, and the plaintiff is entitled to hold the thirty-four shares which were sold on her execution, unless the defendants can show a bettter title.
It was conceded at the hearing, that the bank has no lien upon the shares of its stockholders for debts due generally, and for which the stock is not specifically pledged ; and it had none for the payment of the draft before alluded to, except what was created by the instrument of assignment set forth in the judge’s report.
This instrument was executed at the same time with the draft, and after reciting the draft, and reciting that it had been received by the cashier in payment of Macy’s stock, it transfers to the bank, “ all my right and title to and interest in ninety shares of the capital stock of said bank excepting and reserving twenty-seven hundred and fifty dollars in said stock as collateral security for the payment of said draft.”
Though there is a slight ambiguity in this instrument, yet we think there can be little doubt of the meaning ; it was a transfer of all Macy’s stock, except $ 2750. The effect of an exception and reservation out of a transfer or grant, is to leave the excepted part just as it was before, untransferred. Had this reservation been in shares, instead of dollars, it could scarcely have left a doubt. This is mere matter of description, and any intelligible description is sufficient as well in a reservation as in a grant. Suppose that by a similar description he had transferred $2750 of the capital stock, either to the bank itself or to an individual, would it not have been good, at least for the number of shares which it would cover ? Perhaps a bank, according to its regulations and by-laws, would not be bound to divide a share. But omne majus in se continet minus; $2750 would comprehend $ 2720, equal to thirty-four shares at $80 par value, and this is all the plaintiff claims. *430 Until within a few years, the banks were accustomed to ex* press all transfers and certificates, in dollars and not in shares, and we cannot doubt that such a description is sufficiently definite and precise. The effect of this reservation therefore was, that an amount exceeding thirty-four shares of the stock, was not transferred, but remained the property of Macy and liable to attachment.
The circumstance that no stock was ever formally passed to the credit of Macy in the books of the bank, could make no difference ; he was an original proprietor and subscriber for ninety shares, and upon the payment of his instalments his title was complete, without any formal entry in the books.
Nor does it make any difference, that the bank credited the amount to Macy in his cash account with them ; it having been paid on account of his stock, it was not in their power to make any other application of it.
But it was contended that the plaintiff had misconceived her action, and that an action on the case will not lie against the corporation.
Had the gravamen of the action been the refusal of the agents and officers of the bank to deliver to the plaintiff certificates of shares, admitted and acknowledged to be her property, the case would have presented a different aspect. But here the substance of the complaint is, that the bank refuse to recognize the plaintiff as the owner of the shares, denying her title, and that they, the corporation, have converted the shares to their own use, either by holding them themselves or transferring them to persons other than the plaintiff. In such a case it has long been held, that an action on the case against the corporation, for the value of the stock, is the legal and appropriate remedy. Rex v. Bank of England, 2 Doug. 524 ; Shipley v. Mechanics' Bank, 10 Johns. R. 484 ; Gray v. Portland Bank, 3 Mass. R. 364.
As the action is for damages, and cannot have the effect of enforcing a specific performance, and the bank retain the shares to their own use, the rule of damages must be the market value, of the shares, at the time of the demand and refusal, with interest on that sum to the time of the judgment; the shares of *431 course to be valued as they then stood ; that is, as shares upon whicli $ 80 had been paid.

Judgment on the default.

 See 2 Phil. Ev. (Cowen & Hill’s ed.) 294, in notes.