## STOCKHOLDER CAN NOT BE DEPRIVED OF HIS PROPORTIONATE SHARE OF A NEW ISSUE OF STOCK WITHOUT HIS ASSENT.

### Common Pleas Court of Hamilton County.

GRACE SUTTON, MAUDE SUTTON, SOPHIA L. SUTTON AND RUTH ROY v. THE STACEY MANUFACTURING COMPANY AND JAMES E. STACEY.

#### Decided, February, 1915.

*Corporations—Increase of Stock—Holders of Original Stock Have Preference to Subscribe for New Stock—In such Proportion as the Number of Shares Owned Bears to the Whole Number of Shares Before the Increase—Majority Stockholders Have no Power to Give to One of Their Number a Certain Number of Shares of the Increased Stock Without the Assent of the Minority Stockholders—Non-Assenting Stockholder Can Compel Restitution, Unless.*

1. Where the stock of a corporation is increased, the holders of the original stock have a preference to subscribe for the new stock, each original stockholder being entitled to such proportion of the new stock as the number of shares owned by him bears to the whole number of shares before the increase, and it is beyond the powers of the majority stockholders to give to one of their number a certain number of shares of the increased stock without the assent of the minority stockholders.

2. Where new stock is issued as against the surplus assets of a corporation a stockholder can not be deprived of his proportionate share of the stock so issued without his assent.

3. Where the majority stockholders of a corporation attempt to make a donation of a portion of shares of stock which are issued against the surplus assets of the corporation, a non-assenting stockholder can compel the restitution to him of his proportionate share of the stock attempted to be donated, unless he has estopped himself to deny the validity of the attempted donation of the stock.

4. In considering the question of laches on the part of a non-assenting stockholder in setting up his rights a court of equity will not regard a delay in instituting proceedings so strictly where the parties are members of the same family as where they are strangers to each other.

5. All the non-assenting stockholders may join in an action to compel restitution to them of their proportionate share of the increase if the stock has actually been issued, or to enjoin its issuance if it has not been issued.

6. A court of equity is not bound to confine itself to grant or refuse to grant the relief prayed for, but may grant such relief as the facts may show complainant entitled to, notwithstanding it is not precisely the relief that is asked for, and where a donation of stock is made against the assent of certain minority stockholders the court may compel restitution to them of their proportionate shares of the stock so donated without decreeing a restitution of the proportionate shares of the donated stock to the stockholders who assented to the donation, although the prayer is for the restitution of the entire amount so donated.

Ernst, Cassatt & Cottle, for plaintiffs.
Otto Pfleger and James E. Robinson, contra.

GEOGHEGAN, J.

This is an action brought by the plaintiffs against the defendants, the Stacey Manufacturing Company and James E. Stacey, president of the said company, for the cancellation of an issue of seven hundred and fifty shares of stock of the said company to the said James E. Stacey, to compel the said James E. Stacey to deliver up the certificate for said shares, if the same has been delivered to him, or to enjoin its delivery if the same has not been delivered to him, and to compel him to repay any dividends he may have received on said stock, and for such other relief as may be justified under all the facts and circumstances of the case.

A brief resume of the salient facts brought forth in the evidence in this case is necessary so that a complete understanding may be had of the ultimate determination of the issues of this case.

The Stacey Manufacturing Company has been in the business of manufacturing gas plants since 1855. Prior to 1880 it was a partnership; it was about that time converted into an Ohio corporation, having a capital stock of $150,000. The business was originated by Henry Ranshaw and George Stacey, who were half brothers, and all of the stock of said corporation is now,

with the exception of a few shares held by employees and their representatives, in the possession of the descendants and relatives of the founders of the business.

James E. Stacey, the defendant herein, was elected president and general manager in July, 1901, and has been re-elected to that position annually since that, time, the election taking place in the month of April of each year since 1901. At various times during the period from 1901 to 1912 the salary of said James E. Stacey was increased, and some time after his election as president and when his salary had been increased by various steps to $6,000 a year, he was by resolution allowed a bonus, which was computed by allowing a dividend upon his salary proportionate to the dividend declared to the stockholders, and subsequently he was allowed a bonus in double the amount of said dividend.

Prior to the meeting of April, 1912, Mr. James E. Stacey made a proposition in writing to all the stockholders to increase the capital stock to $1,000,000, $100,000 of which was to be issued to him and a similar amount to others. It may be observed that at the time Mr. Stacey took hold of the company, in 1901, the surplus over and above the capital stock was $10,090, and immediately prior to the meeting of April, 1912, the surplus had been increased to approximately $600,000, and during all these years a dividend averaging forty-five per cent. upon the capital stock of $150,000 had been declared to the stockholders.

The complainants are members of the Sutton family. Mrs. Sophia Sutton is the daughter of George Stacey, one of the founders of the business, and the other plaintiffs are her daughters. They own about twenty-two per cent. of the capital stock of the Stacey Manufacturing Company. When the proposition as to the increase of the capital stock was received by them they replied by telegram as follows:

"We have no objection to increase in capital stock, each stockholder to receive new issue in proportion to present holdings. But as to proposed new distribution, we should like to have plans in detail before consenting to same. We incline to

profit sharing arrangement such as was made for present manager.''

This telegram was signed by James T. Sutton, who is the husband of Sophia Sutton.

No action was taken with reference to said proposition at the April meeting, but a committee was appointed to canvass the advisability of increasing the capital stock of the company and to report the same back to a special called meeting of the stockholders.

On June 12, 1912, notice of a meeting for July 15, 1912, was mailed to all the stockholders, and on July 15, 1912, the meeting was held. The plaintiffs at that meeting were represented by James Sutton, the son of Sophia Sutton and the brother of the other plaintiffs. After some discussion a motion was made to increase the capital stock of the company to $750,000. This motion was carried unanimously. James E. Stacey then requested some action on his request for $75,000 of the capital stock to be allotted to him. This aroused considerable discussion in the meeting. Propositions were made to Mr. Stacey to increase his salary to $20,000 a year, but Mr. Stacey said that he wished to make some provision for himself and his family and that the increase of salary did not interest him and that if the stockholders did not accede to his proposition he would proceed to conclude other arrangements which he had already made. After some discussion, in which James Sutton took a prominent part, the following resolution was presented and passed:

"WHEREAS, The administration of the affairs of this company has been marked by extraordinary success, and

"WHEREAS, The report of the management indicates a probable continuation of such prosperity and enhancement of the value of the company's holdings; and

"WHEREAS, The president and general manager has indicated a desire to make provision for himself and family, by acquiring stock in the company, in lieu of part of his present remuneration;

"*Therefore be it Resolved*, That it is the sense of the stockholders of the Stacey Manufacturing Company, that provided the proposed increase of the capital stock to $750,000 be author-

ized by the Secretary of State of Ohio, one-tenth (1-10) of the said capital stock, that is, 750 shares of same, be issued to James E. Stacey, president and general manager of the company, in lieu of salary bonus at present received by him, with the further understanding that there shall be no further increase of salaries to the president and general manager or the assistant manager, or stock bonus issued, until such time as it shall appear necessary to increase the capital stock to $1,500,000."

This resolution appears upon the minutes to have been "carried without a dissenting vote."

When said resolution was presented, James Sutton, the representative of the plaintiffs, stated that in so far as he personally was concerned he was in favor of the action taken, but that he felt his inability to vote the stock of his principals without consulting them and that therefore he declined to vote as for them.

Further proceedings were then had that day wherein the president and secretary were directed to prepare the necessary papers for the increase of the capital stock and to procure the proper certificate from the Secretary of State.

At a meeting of the board of directors, on December 2, 1912, $600,000 was transferred from the surplus and undivided profits account for the purpose of paying in full for the new stock to be thereafter issued, $75,000 to pay for 750 shares to be issued to J. E. Stacey, and $525,000 to pay for 5250 shares to be declared as a stock dividend of three hundred and fifty per cent. upon the old stock.

On January 20, 1913, the board of directors approved the issue of said stock to James E. Stacey and recited that the entire increase of stock was "fully paid for out of the surplus assets of said corporation set aside for said purpose."

At the stockholders' meeting of April 14, 1913, a resolution was presented and signed by all the stockholders, except the plaintiffs, approving of said issue of stock to James E. Stacey, stating that he was "entitled to special consideration at the hands of the stockholders of said company."

Now, the first question that naturally arises in this case is the question as to whether or not this issue of $75,000 worth of

stock to James E. Stacey could be made without the assent of each stockholder.

An examination of the record shows that this issue to Mr. Stacey was regarded by all of the stockholders as a donation of part of their holdings. It is so referred to by Mr. Stacey himself inasmuch as he requests the stockholders in consideration of his long and faithful services to issue the stock to him. Dr. Alvin Ranshaw, one of the stockholders, referred to it as a donation, as did Dr. George Ranshaw and Mr. F. A. C. Stacey, who presided at the meeting.

So, it would seem that, looking at this issue as a pure donation of part of their holdings to Mr. Stacey, it can not be held that a stockholder may be deprived of a part of his holdings by the majority of the stockholders without his assent.

The law on the subject is plain. Even where the stock of a corporation is increased for some purpose of the corporation and not as against an earned surplus, the uniform current of authorities is that the holders of the original stock have a preference to subscribe to the new stock, each original stockholder being entitled to such proportion of the new stock as the number of shares owned by him bears to the whole number of shares before the increase. This doctrine was first enunciated over a hundred years ago in the case of *William Gray* v. *Bank of Portland,* 3 Mass., 364 (November term, 1807), and has had the almost unanimous approval of the authorities ever since that time.

No better exposition of this doctrine can be found than in 4 *Thompson on Corporations,* Section 3642, which reads as follows:

"*Right of old stockholders to subscribe for increased stock.*
It is a rule of prime importance that where the stock of a corporation is increased the holders of the original stock have the preference to subscribe for the new; each original stockholder is entitled to such proportion of the new stock as the number of shares already owned by him bears to the whole number of shares before the increase. And of this right he can not be deprived without his consent, except where such stock is issued at a fixed price not less than par and he is given the right to take

at that price in proportion to his holding, or some other equitable way whereby he may protect his interests. The reason for this rule is stated by the Minnesota court thus: 'When the proposition that a corporation is trustee of the corporate property, for the benefit of the stockholders, in proportion to the stock held by them, is admitted (and we find no well considered case which denies it), it covers as well the power to issue new stock as any other franchise or property which may be of value, held by the corporation. The value of that power, where it has an actual value, is given to it by the property acquired and the business built up with the money paid in by the substituting stockholders. It happens not infrequently that corporations, instead of distributing their profits in the way of dividends to stockholders, accumulate them till a large surplus is on hand. No one would deny that in such case each stockholder has an interest in the surplus, which the court will protect. No one would claim that the officers, directors, or a majority of the stockholders, without the consent of all, could give away the surplus, or devote it to any other than the general purposes of the corporation. But when new stock is issued, each share of it has an interest in the surplus equal to that pertaining to each share of the original stock. And if the corporation, either through the officers, directors, or majority of stockholders, may dispose of the new stock to whomsoever it will, at whatever price it may fix, then it has the power to diminish the value of each share of old stock, by letting in other parties to an equal interest in the surplus, and in the good will or value of the established business.' Directors are bound to afford existing stockholders an opportunity to subscribe for increased stock in proportion to their holdings, before disposing of the same in any other way.''

The Minnesota case referred to by the author is *Jones* v. *Morrison*, 31 Minn., 140.

Certainly, if the stockholders have a right to subscribe to new stock in proportion to their holdings, this right would be doubly assured when the new stock is issued as against surplus, and it would seem to be fundamental that a stockholder could not be deprived of his proportionate share of the surplus without his assent. 10 Cyc., 543; *2 Beach, Private Corporations,* Section 473; *Morawetz on Corporations* (2d Ed.), 455; *Knapp* v. *Publishers,* 127 Mo., 53; *Stokes* v. *Continental Trust Co.,* 186

N. Y., 285; *Eidman* v. *Bowman*, 58 Ill., 444; *Jones* v. *Railroad*, 67 N. H., 119.

In *Knapp* v. *Publishers, supra,* the court, at page 72, say:

"But where the object is not to increase the capital, but the additional shares are created on account of the existing capital or property of the corporation, the entire stock as then increased represents no more capital than the original shares had done, and the new shares are not owned by the corporation, but as soon as created become the individual property of the owners of the old shares in proportion to their holdings. (*Gibbons* v. *Mahon*, 4 Mackey, 136; 136 U. S., 549.) The corporation has no power to deprive the shareholders of this right."

In discussing the generality of the rule laid down in *Gray* v. *Bank of Portland, supra,* the Court of Appeals of New York, in *Stokes* v. *Continental Trust Company, supra,* at page 291, say:

"This decision has stood unquestioned for nearly a hundred years and has been followed generally by courts of the highest standing. It is the foundation of the rule upon the subject that prevails, almost without exception, throughout the entire country."

So, it would seem that at common law at least there was no power in the stockholders to give to Mr. James E. Stacey that portion of the increased stock that belonged to the plaintiffs in this case.

Counsel for the defendant, however, makes the rather ingenious argument that under the statutes of Ohio a majority of the shareholders have this power and that therefore the common law rule can not be applied to the facts of this case.

It is true that in 1852 (50 O. L., 274) it was provided that the directors of a company might dispose of the residue of the increased capital stock remaining unsubscribed in such manner as the stockholders for the time being might prescribe, and in 1865 (62 O. L., 134), an act supplementary to the former act was passed providing that wherever the stock of manufacturing, bridge or gas companies was increased the directors should apportion such increase *pro rata* to the stockholders of said company in proportion to their stock therein, but if any stockholder should not within thirty days pay to such company the full

amount of said capital so apportioned to him his right thereto should be held to be declined and the directors were authorized to dispose of his share of the increase as the by-laws might prescribe. In 1872 (69 O. L., 24), the original act was amended by providing that a stock dividend against assets might be made upon a majority vote and the additional stock should be issued to the then stockholders of such company or association in proportion to the amount of stock then held by each stockholder and to no other party or person.

An examination of the provisions of these acts that are applicable to the case at bar will show that they were simply declaratory of the common law as evidenced by an almost unbroken line of authorities even before the passage of the acts in question.

Now, on the adoption of the revision of 1880, no special provision was made for the distribution of new stock. In other words, the various provisions as to the distribution of the new stock and the right of the stockholders to subscribe thereto were left out of the revision of 1880.

Counsel for defendants contend that inasmuch as in the revision of 1880 these provisions were dropped and that under the General Code pretty general authority is conferred upon three-fourths or other majority or fractions of the stockholders, a majority of the stockholders would have a right to pass a resolution such as was passed in the case at bar even as against the assent and protest of the minority.

I can not agree with this contention inasmuch as the provisions of the three acts referred to were simply declaratory of the common law and provided the machinery whereby the right of the stockholders to subscribe for the additional stock might be enforced and terminated, obviating the necessity for offering the stock and eliminating all question of what was a reasonable time within which the stockholder must make his election. Although these provisions were dropped in the revision of 1880, the principle that the stockholders should not be deprived of their right to share in the increased stock without their consent or its legal equivalent remained in its full vigor and especially would this be true in cases where the increased issue was against an earned surplus and paid for out of that surplus.

So, I have come to the conclusion that the plaintiffs are en titled to have their proportionate share of the increased stock unless it can be said that they assented to the proposed distribution of the said seven hundred and fifty shares of stock to Mr. James E. Stacey or that they are now estopped to deny his right to have the stock.

That brings us then to a determination of the further question —Did they assent or are they estopped to assert their rights?

That they did not assent is evident. In the first place their representative, Mr. James Sutton, said that he could not vote the stock for his principals, and this is corroborated by every witness on the stand. Further, at late as October 15, 1912, a copy of the minutes of the meeting of July 15th was sent to Mr. James T. Sutton to have him secure to same the signature of Mrs. Sutton and her three daughters and in that letter it was stated that Mr. Sutton voiced his inability to sanction the distribution of the stock to Mr. Stacey. The evidence disclosed that at no time did any of the plaintiffs expressly assent to this distribution of the stock and the very fact that as late as October, four months after the meeting, they were requested to approve of the action of the stockholders, indicates that in so far as the officers of the Stacey Manufacturing Company were concerned, including Mr. Stacey himself, they did not regard the plaintiffs as having assented to the transaction.

However, it is claimed that if they did not expressly assent, that they acquiesced in the transaction and by their failure to speak when they should have spoken they are estopped to assert their rights in the matter.

While some question has been raised as to whether or not the defendants in this case have set up in their answers a sufficient plea of estoppel, I have regarded this matter as if the plea were sufficient in law and have examined the evidence upon that assumption. However, an examination of the evidence does not convince me that Mr. James E. Stacey or the Stacey Manufacturing Company in any way changed their positions by reason of any silence or failure to act on the part of the plaintiffs. It was the understanding of their representative, James Sutton, and he so communicated to them that

"The action which has been taken does not bind the stockholders in any way but is merely an expression of present opinion and the entire matter must again be considered by the stockholders when the application for recapitalization shall have been approved by the Secretary of State of Ohio. This will require several months and the new arrangement can not become effective until April, 1913.''

Counsel for defendants claim that this is a self-serving declaration on the part of an agent to his principals and should not be considered.

Under some circumstances there might be some force in this contention, but in this case we have to view the situation as it appeared to the plaintiffs in this case and determine from that whether they are guilty of such laches in asserting their rights in the matter as would justify an assumption of acquiescence on their part. It further appears that when James Sutton, at the July meeting, offered to telegraph to his principals requesting their authority to vote for the distribution of the stock to Mr. Stacey, he was assured by those present that there was no hurry, that the matter would not be consummated for some time and he would have plenty of time to communicate with his principals.

While it is true that there is in evidence a letter of James T. Sutton, the father of James Sutton, Jr., in which he says that he will have the minutes signed, the evidence shows that this letter was not written after consultation with his daughters and that his wife was at that time too ill to be consulted upon the subject.

In order that an estoppel may constitute a complete defense to the action, the burden is upon the party who relies upon it to prove clearly and unequivocally every fact essential to the estoppel (*Kroll* v. *Close*, 82 Ohio St., 190; *Woodruff* v. *Montgomery*, 11 C.C.[N.S.], 72). And in order that the estoppel may be available to the person who sets it up, he must show that he was misled by the apparent acquiescence or silence of the persons against whom he sets it up to his disadvantage, and he must also have been destitute of any knowledge of his legal rights and of the means of acquiring such knowledge. *Steel* v.

*Smelting Co.*, 106 U. S., 447; *Lux* v. *Haggin*, 10 Pac. Rep., 674 (Supreme Court of California); *Wood on Limitations*, Chap. 62; *Morrell* v. *St. Anthony Falls W. P. Co.*, 26 Minn., 229; *Stockman* v. *Riverside L. & I. Co.*, 64 Cal., 57.

Now, applying these principles to the facts in this case, an examination of the evidence discloses that Mr. Stacey was very anxious to have the approval of the plaintiffs to the minutes which set forth the resolution authorizing the issue of the seven hundred and fifty shares of the increased stock to him. He called on Mrs. Roy in Seattle and discussed the matter with her; he had letters written to the Suttons at Berkley, California, asking for their approval. The only logical conclusion to be drawn from these circumstances is that he was aware that he would have no legal right to their proportion of the increased stock unless he had their assent thereto, and knowing this fact how can it be said that he was misled by their silence and that they are therefore estopped? If it be said that the plaintiffs took an extraordinarily long time before they asserted their rights in this matter and disapproved of the action of the stockholders, it must be remembered that they were out in California and that Mrs. Roy was separated from her family by many miles; that Mrs. Sutton is a very old woman and was for a long time inaccessible for consultation upon a business matter of this kind; that it was desirable that being of one family they should discuss the matter among themselves and take the same action in regard to same. Further, it must be considered that as Mr. Stacey was the brother of Mrs. Sutton and the uncle of the other plaintiffs a natural hesitancy would exist upon their part to antagonize him and to oppose his request made with such positiveness at the meeting at which their son and brother attended.

The Supreme Court of Ohio, in *Paschall* v. *Hinderer*, 28 Ohio St., 568, in discussing questions of estoppel, especially where close and intimate family relations are involved, say on page 582:

" 'It is always to be considered that it is a painful thing to take such proceedings as the present. They necessarily have a tendency to lessen affection between relatives, and delay ought

not so seriously to prejudice the rights of the parties as in the case of strangers.' *Laver* v. *Fielder*, 9 Jur. (N.S.), 190.

"And in *2 Story's Eq.*, Section 1520, referring to the case cited, it is said: 'And delay in instituting proceedings where the parties are members of the same family is not so strictly regarded as where they are strangers to each other.' "

In my examination of this plea of estoppel, I have given careful examination to the entire evidence in the case; I have regarded the statements of Mr. James Sutton at the meeting, before it, and subsequent to it; I have also examined the record with reference to Mr. Stacey's consultation with the gentlemen in Chicago and elsewhere with reference to the starting of a new business; I have read and re-read the testimony in this regard; and I have come to the conclusion, after serious and mature reflection, that there was no laches on the part of the plaintiffs in this case that would justify the application of the doctrine of estoppel to their rights in this matter, and I am satisfied that Mr. Stacey was not misled in any way by their conduct so as to give away any of his valuable rights. It is true that when the stock was voted to him he was not to receive any further salary bonus, but this bonus had already been voted to him at the April, 1912, meeting, as it had been voted to him at all previous annual meetings of the stockholders, and there is nothing in the minutes of the July, 1912, meeting to indicate that the bonus voted at the previous April meeting was to be relinquished during the existing fiscal year. As to his subsequent receiving of a bonus it would depend entirely upon the good will of the stockholders and not upon any contractual right on his part. I am further satisfied that he knew or had the means of knowing that in so far as these plaintiffs were concerned he could not obtain their proportionate share of the stock without their express assent and that he knew from the time of the meeting, July 15, 1912, to the commencement of this action, that the plaintiffs were not assenting and it was improbable that they would assent to the distribution of their proportionate share of the increase to him.

A third question must be disposed of—the right of the plaintiffs to maintain this action.

The defendants claim that if any right exists in the plaintiffs at all it is an action at law for damages.

While there are some authorities that seem to support this view, I am not aware that the rule has ever been applied in cases precisely like the one at bar. The action here is really to enjoin the giving away of the plaintiff's property. It is not the kind of action, as found in a great many cases, that is based upon a refusal to permit a stockholder to subscribe to an increased issue and the subsequent selling of the stock to third persons who have no knowledge of the refusal to permit the stockholder to subscribe. This case is governed largely by the rule laid down in *Dousman* v. *Wisconsin & Lake Superior Mining & Smelting Company*, 40 Wis., 418, where it was claimed that if the plaintiff had any remedy at all it was at law, and the court said on page 421:

"But the effect of such an action would be to convert part of his interest as a shareholder into a judgment for damages; in other words, to sell a portion of his stock to the corporation. That he is not obliged to do. He has a right to maintain his proportionate interest in the corporation, certainly as long as there is sufficient stock remaining undisposed of by the corporation. Trading corporations of the character of the appellant have been likened to partnerships, and the remedies of stockholders to those of partners, by very high authority (*Gray* v. *Portland Bank, supra; Robinson* v. *Smith*, 3 Paige, 222; *Adley* v *Whitstable Co.*, 17 Vesey, 315). And equity has always afforded a remedy to a stockholder, in such a case as this, by injunction, account, or other appropriate decree."

This rule was followed in *Electric Company* v. *Edison Company*, 200 Pa. St., 516. An injunction in cases of similar import has been allowed in *Cunnigham's Appeal*, 108 Pa. St., 546; *Wall* v. *Utah Copper Co.*, 70 N. J. Eq., 17.

So, I am of the opinion that the plaintiffs have a right to pursue the remedy sought for herein, unless by reason of the statute there has been a misjoinder of parties plaintiff in this action. However, before leaving this subject of the right of a stockholder to participate in an increase and his right to enjoin any interference on the part of others with his exercise of the right, I must ackowledge my indebtedness to the very able article by

Mr. Frank M. Coppock of this bar, entitled: "Stockholder's Rights to Newly Issued Shares," appearing October 11, 1909, in Vol. 7 of the Ohio Law Reporter, pages 345 *et seq.* To any one who is interested in an examination of the various phases of the general subject I have been discussing, I can recommend no clearer or more concise treatment of the subject than is contained in that excellent article.

Now as to the question of joinder—it is claimed that the plaintiffs have no right to join in this action.

It would seem that Section 11254 of the General Code disposes of this contention. That section provides:

"All persons having an interest in the subject of the action, and in obtaining the relief demanded, may be joined as plaintiffs except as otherwise provided."

The joinder permitted by this section is certainly not the joinder relating to a joint cause of action because in that case all parties *must* be joined and if a party does not assent he must be made defendant. Section 11256 of the General Code.

In the case of *Osborne* v. *Wisconsin Central Railroad Company*, 43 Fed., 824, it was held that in order to avoid a multiplicity of actions, holders of different tracts of land may unite as plaintiffs to enjoin the defendant from bringing actions in ejectment, where the rights of action are against the same party and arising from some common cause, are governed by the same legal rule and involve similar facts, and where the whole matter might be settled in a single suit by all persons uniting as co-plaintiffs or by one of the persons suing on behalf of the others.

And this principle was further enunciated and its correctness sustained in the case of *Liverpool & London & Globe Ins. Co.* v. *Clunie*, 88 Fed., 160.

In the case of *Brown* v. *DeYoung*, 167 Ill., 549, cited by counsel for defendants, and to which a further reference will hereafter be made, the action was brought by all the minority stockholders, who joined as plaintiffs.

In *Insurance Company* v. *Ward*, 5 C.C.(N.S.), 514, the court, in discussing Section 5005, Revised Statutes (now Section 11254, General Code), say:

"In commenting upon this section, as found in the codes of several states, Mr. Bliss, on Code Pleading (3d Ed.), Section 73, page 116, uses this language:

" 'There is a distinction between the rule requiring persons united in interest to be joined and the one just given (the section of the code above quoted), as the latter does not contemplate a joint interest, nor is the union made imperative. In the cases where it has been sanctioned, the interest is called a common one—that is, certain persons are interested in that concerning which the wrong has been done, and will all be benefited by the relief which is sought; they have a common interest, and may join in seeking the relief. * * * In either case, they may unite in an action, notwithstanding the technical common law rule confining the union to those having a joint interest.'

"Again, in Section 74, the same writer says:

" 'It shocks the prejudices of common law pleaders to speak of a union of plaintiffs where there is not a joint interest; and, such is the effect of legal education and long habits of thinking, that, what seems so natural in a proceeding to prevent a common injury, or to set aside a sale for the benefit of common creditors, or to subject to their respective claims the assets of an estate, seems almost impossible, in case a sum of money is sought to be recovered in which sundry persons have a several, and perhaps unequal, interest. But it has come to be generally conceded that the rule is universal in its application, as it is in its terms; and if two or more are interested in the subject of the action, and in the relief sought, they may unite as plaintiffs for the recovery of money, or of specific real or personal property.'

"This subject is further discussed in the subsequent sections of Bliss, and also in Pomeroy on Code Remedies, Sections 41, 62, 63. The purport of the discussion by each of these writers is, that, under the system introduced by the code of civil procedure, the rules which were in force under the common law system are so relaxed as to conform in large measure to the rules in equity pleadings, and to authorize, though not necessarily to require, all who have an interest in the subject of the action, to unite in bringing suit."

So, it would seem that the point of misjoinder in this case is not well taken. It would certainly be rather peculiar, at this time, when the whole trend of judicial effort is toward the simplification of procedure, to so rule in this case that all the plaintiffs would be compelled to file separate suits involving the

same subject-matter, against the same defendants, asserting the same rights, and asking the same relief.

Having, therefore, determined that the plaintiffs are entitled to relief in this action, it now becomes necessary to determine to what extent the court shall allow the prayer of their petition.

The plaintiffs pray that said issue of stock to the said James E. Stacey be canceled; that if said certificate has not been delivered to said James E. Stacey that the delivery of same be enjoined; that if it has been delivered to him, he be required to return the same, and that he be ordered to repay to the corporation any dividends received by him thereon; that said corporation be enjoined from treating said stock as valid or transferring said stock upon its books, and for all other relief to which they may be entitled in the premises.

However, only the plaintiffs in this case are complaining of the action of the stockholders. The other stockholders have ratified the action taken at the stockholders meeting of July 15, 1912. They are not here now asserting any claim to any portion of the seven hundred and fifty shares of stock issued to the defendant, James E. Stacey. As this court is not concerned with the rights of any person who is not before the court seeking a right, the court is inclined, although the prayer of the petition is very broad, to narrow it to afford the plaintiffs the relief which they seem to be in equity entitled to.

The court is inclined to adopt the rule laid down in the case of *Brown* v. *DeYoung*, 167 Ill., 549, where in a suit to compel the restoration to a corporation of misappropriated funds and where if the decree were granted it would benefit not only the non-assenting stockholders but also the assenting stockholders, it was held that the decree should be so framed as to benefit non-assenting stockholders only. A similar rule was adopted in *Dousman* v. *Wisconsin & Lake Superior Mining & Smelting Co.*, 40 Wis., 418, which was an action by a stockholder to require the defendant corporation to either issue to plaintiff new stock proportionate to his old stock or to cancel one-half of the stock and certificates issued and delivered to other stockholders, wherein the court simply ordered the corporation to issue the proper amount of full paid stock to the non-assenting stock-

holder so as to make his stock bear the same proportion to the
new stock as it did to the old.

A court is not bound to confine itself to grant or refuse to
grant the relief prayed for. The prayer forms no part of the
petition. If the facts show that the plaintiff is entitled to relief,
the court will grant him such relief as the facts may show he is
entitled to, notwithstanding it is not precisely the relief that he
asks for. This principle has been affirmed many times in this
state. *Bloch et al* v. *Koch,* 1 Bulletin, 91; affirmed without re-
port 29 Ohio St., 565; *Ryan* v. *O'Connor,* 41 Ohio St., 368;
*Moore* v. *Ogden,* 35 Ohio St., 430; *Coffinberry* v. *Oil Co.,* 68
Ohio St., 488; and Section 11583 of the Code authorizes the
court to grant such relief as the justice of the case may require.

Now, all the other stockholders are not here claiming any re-
lief. They have given away their property. This they had a
perfect right to do. As the court said in *Stokes* v. *Continental
Trust Co.,* 186 N. Y., 285, at page 298:

"The other stockholders could give their property to Blair &
Co., but they could not give his. A share of stock is a share in
the power to increase the stock, and belongs to the stockholders
the same as the stock itself."

Therefore, the court, in conclusion, finds that the plaintiffs
are entitled to have delivered to them certificates of the in-
creased stock of the Stacey Manufacturing Company in pro-
portion to their respective shares of the old stock and that the
said defendant, James E. Stacey, should deliver to the Stacey
Manufacturing Company, out of the seven hundred and fifty
shares heretofore issued to him, that proportion of the said
issue that under the findings of the court would belong to the
plaintiffs in this case, and the court will make such further
orders as are necessary in order to carry into effect the conclu-
sions that the court has reached in this matter.

In conclusion, I want to express my thanks to counsel for the
very able and exhaustive briefs they have submitted to me on
the various propositions of law involved in this case and to apol-
ogize for the somewhat long delay in deciding this cause, which
was due largely to the fact that the court read all of the authori-

ties submitted, re-read many of them, and read many authorities that came to his attention through independent research. While the court expressed at various times some regret that this matter was in court at all, owing to the possible future consequences to a long established and well conducted business that might result from the prosecution of an action of this kind, still, when a matter is presented to the court it is to be determined on the respective rights and equities of the parties in the matter and not upon the court's opinion as to their good judgment or common sense.

Counsel will confer with the court with reference to preparing a decree in this matter and a decree in conformity with the findings of the court will thereafter be entered.