**[266]** INGRAM AND WIFE V. LINN, ADM'R.

Where the petition alleged that the slave of the defendant pursuaded, decoyed, and enticed away the slave of the plaintiffs, and that having so pursuaded and decoyed him to the Guadalupe river, he seized him and, with the aid of other slaves, forced him into the river, by reason of which he was drowned, &c.: *Held,* That the defendant was not liable. (Note 54.)

The rule of the common law in respect to the liability of the master for the tortious acts of his servants is applicable here to the relation of master and slave.

The master is answerable for the misconduct and negligence of his slave while acting in the immediate employment of the master or under his authority; but he is not answerable for a willful and unauthorized trespass committed by the slave.

Appeal from Victoria. The appellant filed their petition in the District Court on the 15th day of July, 1844, alleging, in substance, that on the 30th day of June in that year a certain slave named Nat, belonging to the estate of Thomas H. Poage, deceased, (of which the appellee is administrator,) pursuaded, decoyed, and enticed away a certain other slave named Jerry, the property of the plaintiffs, of the value of $1,000, and that having so pursuaded and decoyed the slave Jerry to the Guadalupe river, there, with the aid of certain other slaves, the said Nat seized and forced the said Jerry into the river, by reason of which he was drowned, to the damage of the plaintiffs $1,000.

The defendant answered by a demurrer to the petition and a plea of "not guilty." The case was heard at the Spring Term, 1849. The court sustained the demurrer and dismissed the case, and the plaintiffs appealed.

*Neill,* for appellants. This was a case wherein a mischievous intent was manifested out of the sphere or knowledge of the master; but that very fact goes far to show such carelessness on the part of the master as to make him

133

Ingram v. Linn.

accountable. [267] By reference to the decisions in South Carolina, where the common law prevails, we find the review presented in this case of O'Connell *v.* Strong (Dud. R., 265) and the cases there laid down and referred to, as full as any reported, and we refer to them.

*Cunningham*, for appellee. The common-law rule that a master is not liable in damages for the willful acts or trespasses of his servant is too well established to require the citation of authorities to support it. The same rule has been adopted in regard to the liability of the master for the acts of his slave wherever the question has come before any of the American courts governed by the common law, except in the State of South Carolina, where the liability of the master is restricted. (Wingis *v.* Smith, 3 McC. R., 400; Snee *v.* Trice, 2 Bay R., 345; 2 Humph. R., 140; Cawthorn *v.* Deas, 2 Port. R., 276; Leggett *v.* Simmons, 7 S. & M. R., 348; 7 Yerg. R., 367.)

WHEELER, J. Is the owner liable to an action for the injury occasioned by the wrongful act of his slave complained of in this case? In other words, *is he responsible for a willful and unauthorized trespass committed by his slave?* The question was considered by the Supreme Court of Tennessee in the case of Wright *v.* Weatherly, (7 Yerg. R., 367.) The slave of A was stabbed in a fight with the slave of B. B had no knowledge or agency in the transaction; and it was held that A could not maintain an action against B to recover damages for the loss of his slave. In the opinion of the court by Judge Green the view of the question taken by that court is thus presented with the perspicuity, accuracy, and conciseness which characterize the legal opinions of that learned judge. "There are," he says, "but two classes of cases known to the common law which have any analogy to this case. Either we must look upon the slave as occupying the same relation to the master as the [268] servant does in England, or we must regard him in the light of property, and hold the master liable as he would be for mischief which might be committed by a vicious domestic animal. These are the only analogies the common law furnishes us, and by the application of neither of these can this action be supported. To consider the slave as property only, the owner would only be liable in case he was acquainted with the vicious propensities and habits of his slave, and with such knowledge should permit him to run at large. * * * If we consider him in the light of a servant only, the master would not be liable for the injury charged in this declaration; for in England, although a master is liable to answer for any damages arising to another from the negligence or unskillfulness of his servant acting in his employ, yet he is not liable in trespass for the willful act of his servant, done without the direction or assent of the master, (Id., 379.)

The same question was considered by the Court of Appeals of South Carolina in the case of O'Connell *v.* Strong, (Dud. R., 265.) The former decisions were reviewed, and the conclusion adopted appears to have been "that the doctrine respecting masters and servants, as it obtains here and in England, is properly applicable in this country to the relation of masters and slaves, and that a master is liable for a civil injury occasioned by the misfeasance or neglect of his slave. The injury, however, thus occasioned, for which the master is answerable, should appear to be occasioned by the slave in performing some lawful and voluntary act by the command, permission, or consent of his master, either expressly proved or to be inferred from the nature and circumstances of the case." Judge Butler, in giving the opinion of the court, quotes with approbation the above from Judge Brevard's report of the decision in Snee *v.* Trice, then in manuscript, but since published, (1 Brev. R., 178,) and adds: "According to the law as it is now settled, I think the position may be laid down that in all cases a master will [269] be held liable for the negligence or misfeasance of a slave whilst in the lawful and authorized employment of the master; and more particularly so when the master is acquainted with the

means and manner of the employment." The opinion in this case carries the doctrine of the liability of the master as far as it had ever been extended in South Carolina; and although it seems to me to have asserted the true doctrine, it went confessedly beyond what had been previously ruled in at least one case in the same State. (Wingis *v.* Smith, 3 McC. R., 400, which it reviews and overrules.)

In North Carolina and Tennessee it is held that the master is liable for injuries to third persons arising from the negligence or misfeasance of servants whilst in the lawful and authorized employment of the master, but that he is not in general liable for trespasses and torts committed by his servants. (5 Humph. R., 397; 2 Murph. R., 389; 1 Ire. R., 240.)

In Virginia it is held that a man is not in general responsible for a willful and unauthorized trespass committed by a servant in his employ. (5 Menif. R., 483.)

Although the analogy has sometimes been doubted, (7 Yerg. R., 379,) the correct principle seems to be that adopted in South Carolina, and perhaps in most of the slaveholding States governed by the principles of the common law, that the doctrine respecting the relation of master and servant, as it prevails in this country and in England, is properly applicable here to that of master and slave. (1 Brev. R., 178.) The general rule applicable to the relation of master and servant by the common law doubtless is that the master is answerable for the misconduct and negligence of his servant when acting in the immediate employment or under the authority of the master. (3 Mass. R., 364, 385; 17 Id., 479, 509; 19 Wend. R., 345; 1 Pick. R., 465, 470.) But this liability does not extend to unauthorized acts committed by the servant out of the course of his employment. (17 Mass. R., 479, 510; 2 N. Hamp. R., 548; 1 Hill. N. Y. R., 480; 1 East, R., 106.) The master (says Kent) is not answerable for fraudulent, tortious [270] acts or misconduct of his servant in those things which do not concern his duty to his master, and which, when he commits, he steps out of the course of his services. (2 Kent Comm., 259, 260.)

These references will suffice to show that the master is not answerable for a willful and unauthorized trespass committed by his slave, and that therefore the present action cannot be maintained.

Judgment affirmed.

Note 54.—As to liability of the master for the acts of his servant or agent. (See Echols *v.* Dodd, 20 T., 190.)

