Dewey, J.
1. As to the objection to the form of the action. This is not a case of conceded ownership of shares by a party seeking a certificate as the evidence of his title, but it is a case of a controverted title, the defendants wholly denying all interest in the plaintiff as to the shares in their stock, which are the subject of controversy. The allegations being that the defendants refused upon demand to give the plaintiff the usual certificates of ownership, denying as to him all right to the shares, or privilege as owner thereof; if the claim of the plaintiff is well founded, he may recover damages to the whole extent of his interest in the shares. This general principle was fully declared by this court in the case of Hussey v. Manufacturers' and Mechanics' Bank of Nantucket, 10 Pick. 421. It is true that the form of that action was tort, and not assumpsit. But other cases have most distinctly recognized the right to declare in assumpsit in cases like the present. The point was directly raised, and so held, in Gray v. *181 Portland Bank, 3 Mass. 364, and in Sargent v. Franklin Insurance Company, 8 Pick. 90. The case of Bank of Columbia v. Patterson, 7 Cranch, 299, 306, is also to the point. And in Burnett v. Lynch, 5 B. & C. 589, 609, the principle will be found stated and illustrated by Littledale, J. The case at bar shows sufficient privity between these parties to raise an assumpsit, if the plaintiff establishes a valid title to the shares. The form of the action is therefore no objection to a recovery by the plaintiff.
2. It was competent for the plaintiff to show payment ol his proportion of the stock of the corporation. The proposed arrangement between the partners, being in fact the identical persons who were incorporated, as to what was to be the system to be adopted after obtaining an act of incorporation, was of itself of no moment, and not binding, unless acted upon by the corporation, the only material point here being as to the actual transfer by the plaintiff, and acceptance by the defendants, of the interest and rights of the plaintiff in the partnership property, in payment of his shares in the corporation ; and the previous proposal to this effect is only competent as explanatory, and tending to show the whole history of the proceedings of the company, and thereby establish the fact of receipt of payment by the corporation. It seems to us, however, that the defence itself assumes and sustains the arrangement thus set up by the plaintiff, that the interest of each partner in the joint-stock company, and all payments made by any one in reference thereto, were to be allowed him by the corporation, who were to take the partnership property; and the same is abundantly established by competent evidence ; and the only question controverted in this part of the case seems to be the amount, which the plaintiff was entitled to be credited in the account towards payment for his stock in the corporation. On the one side it was insisted that this sum was fully adequate to discharge him from any further advance for his shares, and on the other side that it was altogether insufficient. This point was submitted to the jury upon conflicting evidence, who found this fact in favor of the plaintiff.
*182 3. As to the evidence of Williams, that at the time of the alleged transfer of the shares it was understood by all that the company had made money, it might have some slight bearing upon the question, whether the corporation would probably have accepted the transfer of the individual partners’ interest in the concern toward payment for the shares. It is the opinion of the court, that under the circumstances of the case, and, after the evidence which had already been introduced, the admission of this evidence furnishes no sufficient ground for setting aside the verdict.
4. The paper, containing the account of the plaintiff’s payments into the partnership stock, and as to which Raymond testified, was competent evidence to go to the jury, being an account drawn up by the agent of the corporation. The precise nature of Pratt’s agency it may be difficult to define, but from the testimony of Tyler it appears that Pratt was the general agent for receiving all moneys advanced towards partnership stock. This account was drawn up under his direction, and in the ordinary course of business, and was evidence proper to be submitted to the jury.
5. The testimony of Pratt was properly excluded. For the failure to comply with the provisions of Rev. Sts. c. 38, §§ 16, 17, 19, 22, subjected the members of this corporation to liability individually for all its debts; and we are of opinion that the claim of the plaintiff, now in suit, was a debt of the corporation, within the meaning of those sections. Carver v. Braintree Manuf. Co. 2 Story R. 432. Pratt was a member at the time the liability arose, and up to the time the action was commenced.
6. The rule of damages, as stated by the presiding judge, was correct, the action being assumpsit, and the recovery being for refusal to comply with plaintiff’s demand in 1848.
Judgment on the verdict.