Opinion delivered by
Pershing, P. J.
The plaintiff set down this case for hearing without filing a replication to the answer of the defendant. The facts are not disputed. The Pottsville Water Company, by its act of incorporation, and the supplements thereto, had an authorized capital of 8000 shares, at the par value of $25 per share. In 1873 the company was engaged in building a dam, and making other improvements, and needed money. Of the stock authorized there remained 1043 shares untaken by previous subscriptions. To avoid borrowing money it ivas determined to issue these shares, and as the the company was then worth more than *par in the market, the Board of Managers, on the 28 th of April, 1873, adopted a resolution that the 1043 shares still held by the company should be sold at public auction, for cash, at the Merchants’ Hotel, in Pottsville. In pursuance of this action, public notice was given on the 7th of June, 1873, through one German and two English newspapers, published in the borough of Pottsville, that the sale would take place on the 23d day of June, 1873.
By the terms of the resolution, the certificates of stock were to *49 be dated and delivered to the purchasers at the sale, on the first day of July, 1873. The sale took place, and the amount realized to the company over the par value of the shares sold was $3572.00. This action of the board of managers seems to have met the approval of all the stockholders except the complainant. At the date of the sale, and for some time prior thereto, the complainant held, and is still the owner of, 455 shares of the stock in said Water Company. The bill of the complainant was filed on the 30th day of June, 1873, at which time, after argument, a preliminary injunction was refused. The fourth paragraph avers “that according to law and equity the said 1043 shares of stock should have been distributed at its par price among those who were the holders of the stock at and immediately before the time of said sale, and should not have been sold at auction.”
The seventh paragraph sets forth “ that the plaintiff is willing to subscribe, pay for and receive the additional shares of stock, to which it is entitled upon distribution among the stockholders at and immediately before said sale, to wit: Sixty-eight shares of said stock at the par value thereof of twenty-five dollars a share, and has requested said defendant to furnish to it the said number of shares at par, but said shares have not been so furnished.”
The prayers in the bill are, (1) for a perpetual injunction to restrain the defendant from issuing or delivering any of the said 68 shares of stock, claimed by plaintiff, to any purchaser or purchasers thereof, at said public sale; and (2) for an order or decree against the defendant to deliver to the plaintiff the said 68 shares of stock upon receipt of the sum of $1700, the par value of said stock.
The answer of the defendant, which, in the absence of a replication on the part of the plaintiff, must be taken to be true in every point, 2 Dan. Ch. Pr. 966, admits that plaintiff requested defendant to furnish 68 shares of stock at their par value, as set forth in the seventh paragraph of the bill, but avers that said request was made after the sale had taken place, some time between the 23d day of June and the filing of the bill, which was on the 30th of June, 1873; that plaintiff was informed that the company, having sold all the residue of the stock at auction, had none to sell, *and that no tender of money for payment of the 68 shares of stock claimed was made then or at any other time.
*50 As bearing on the equity of this case, the familiar rule that a party must be prompt in asserting his rights has direct application. Nothing can call a Court of Equity into action but conscience, good faith, and diligence; when these are wanting the Court is passive and does nothing; laches and neglect are always discountenanced. A Court of Equity frequently refuses an injunction where it acknowledges a right, when the conduct of a party has led to a state of things which occasions the application, and therefore will refuse or dissolve an injunction without saying in whom the right is. Brightly’s Eq. 260. To entitle the plaintiff to an injunction he must show a strong prima facie case in support of his title, and must not be guilty of any improper delay in applying for relief. Acquiescence, though not in the sense of conferring a right on the opposite party, but merely in the sense of depriving the complainant of his right to the interference of a Court of Equity will, of course, defeat the application for an injunction. Gray v. R. R. Co., 1 Gr. 412. From the date of the resolution, directing the sale of the stock, till one week after the sale took place, no action was taken by the plaintiff beyond the reading of a notice on the day of the sale. The plaintiff, as a stockholder, had access to the books of the Company, and want of knowledge or of notice is not asserted. This delay was acquiescence, a clear definition of which is given by Lord Cottenham in Duke of Leeds v. Earl of Amherst, 2 Phil. Ch. Cas. 117. “If a party having a right stands by and sees another dealing with the property in a manner inconsistent with that right, and makes no objection while the act is in progress, he cannot afterwards complain. That is the proper sense of the word acquiescence.”
But we do not rest the decision we are about to make on the ground alone of a want of diligence on the part of the plaintiff The bill does not charge that the sale of these shares at public auction was a violation of any part of the charter of the Water Company, nor does the plaintiff aver that it sustained any damages in consequence of the mode adopted to dispose of the stock. At the start all had the opportunity of subscribing for so much of the stock as they severally wished to take. There is nothing in the acts of incorporation directing how the untaken stock shall be issued or sold. In this aspect of it, the case is like that of Reese *51 v. the Bank of Montgomery County, 7 Casey, 78. Lowrie, J., said in that case : “ Since the acts of incorporation do not declare how the untaken stock shall be disposed of, it stood like all the other corporate franchises, and belonged to the corporators, and they had a right to all the profits that could be derived from it; the right was held by the bank *in trust for its members, The directors might order it to be sold, and then the profits would be shared among the members at the next dividend; or they might allow each member to subscribe for his proportion of the new stock as nearly as it could be fixed in integral shares.” In that case the directors of the bank attempted to dispose of the stock unequally to some of the stockholders to the exclusion of other stockholders. Nothing of that kind is charged against the board of managers of the Water Company, defendant. The opportunity to buy was open to all.
The claim of the plaintiff, that untaken shares of the stock of the Water Company should, in law and equity, be distributed among those who were the holders of the stock at and immediately before the time of sale, cannot be sustained. When it is said the untaken stock belonged to the old stockholders, more is meant than can be admitted. In a certain sense the assertion is true. But it is not to be admitted that an old stockholder had a right to subscribe to the stock superior to one who owned no stock. If this were so a first subscriber might compel all the remaining untaken stock to be sold, or at least would have a right to exclude any other person from subscribing. Curry v. Scott, 4 P. F. S. 270.
In Gray v. the Portland Bank, 3 Mass. 364, cited by plaintiff’s counsel, it was held that when a banking company had been incorporated with a capital not less than one sum and not greater than another, and had commenced business with the smaller capital, and afterwards voted to increase to the larger, those who held the stock in the capital first raised had a prior right to subscribe to the new stock. That case and the one before us are unlike in this: that here is no increase of capital, but the filling up of one both authorized and required by the wants of the Company. That this difference is a substantial one, and that Gray v. the Portland Bank is one of doubtful authority, from the fact that it was decided by only two judges out of five, may be seen by a reference *52 to Curry v. Scott, supra. If, however, that case is an authority on the subject of the injury done the present plaintiff, it is of equal authority on the subject of the remedy.
This, it is distinctly laid down in Gray v. the Portland Bank, is a special action of assumpsit against the corporation. This is also substantially decided in Reese v. Bank, supra. In Shipley v. Mechanics’ Bank, 10 Johns. (N. Y.) R. 484, the court refused a mandamus, commanding the directors of the bank to allow the transfer of certain shares of stock, on the ground that there was an adequate remedy by special action on the case. Many cases to the same effect might be cited. They show that the plaintiff, if injured, has an adequate remedy in a court of law, and cannot therefore bring to his aid the powers of a court of equity.
*A careful review of the whole case has brought us to the conclusion that the plaintiff’s bill should be dismissed.
Bill dismissed, with costs.