May Term, 1858.

THE OHIO
INSURANCE
COMPANY.
v.
NUNEMA-
CHER.

---

(1) Touching the jurisdiction, counsel for the appellants cited *Bryan* v. *Blythe,* 4 Blackf. 249; *Perkins* v. *Smith, id.* 299; *Beard* v. *Kinney,* 6 *id.* 425; *Wetherill* v. *The Inhabitants, &c.,* 5 Blackf. 357.

(2) Touching sham defenses, counsel for the appellee cited 2 R. S. p. 44, § 77; 8 Barb. (S. C. R.) 79; 2 Cow. 637; 18 Wend. 567; 1 Barn. & Cress. 286; 4 How. Pr. 115; 6 *id.* 360, note; *Id.* 357; *Darrow* v. *Miller,* 5 *id.* 247.

---

## THE OHIO INSURANCE COMPANY *v.* NUNEMACHER.

A person demanding the right to subscribe to the capital-stock of a corporation is not relieved from the necessity of making a tender, by the statement by the secretary of the company that he has no stock for him.

In a suit against a corporation by a person demanding such right, parol evidence of the contents of a note and check tendered in payment for such stock, is inadmissible, unless the proper foundation for its introduction has been laid.

And, in such case, evidence of a demand of such stock, and of a tender of such note and check in payment therefor without legitimate evidence of their contents, coupled with proof that no money was offered, is not sufficient to support a finding for the plaintiff.

May Term,
1858.

THE OHIO
INSURANCE
COMPANY
v.
NUNEMA-
CHER.

APPEAL from the *Floyd* Circuit Court.

Friday,
May 28.

WORDEN, J.—This was an action by the appellee against the appellants, to recover damages for refusing to permit him to subscribe for stock in said company. The complaint avers, in substance, that the defendants were possessed of a capital-stock of 100,000 dollars, divided into shares of 50 dollars each, and that the plaintiff was the holder and owner of sixty of those shares; that afterwards, the defendants by a vote of their directors, increased their said capital-stock to 200,000 dollars, whereby the plaintiff became entitled to subscribe for and receive as many shares in the new stock as he held in the old, upon paying the par value thereof, to-wit, 50 dollars on each share; that the plaintiff afterwards, to-wit, &c., offered to subscribe for sixty shares of the new stock, and has always been ready, &c., and that he offered to pay to said company all such sums of money as they had ordered to be paid in upon said subscription to the capital-stock, at such times as the company had ordered and consented that such sums should be paid; that he has always been ready to pay, &c., and that he demanded the certificates of stock, &c.; but the defendants wrongfully and unlawfully refused to permit him to subscribe for said new stock, and issue him certificates therefor, but, on the contrary, after the order was passed for increasing the stock, and before the books were publicly opened, the greater part of the stock was taken by the directors, and the residue by a few of their friends, whom the directors had invited to take stock, without any notice having been given, &c.; that the market value of said stock was 70 dollars per share, &c. Wherefore he claims 1,200 dollars damages.

There was a demurrer filed to the complaint, which was

May Term,
1858.

THE OHIO
INSURANCE
COMPANY
v.
NUNEMA-
CHER.

overruled by the Court. The defendants then filed their answer, which led to issues of law and fact.

There appear to be two affirmative paragraphs of the defendants' answer, to which there is no replication. Without a determination of the issues of law, and in this state of the pleadings, the cause was submitted to the Court for trial of the issues of fact, and there was a finding for the plaintiff for 663 dollars. Motion for a new trial overruled, and judgment on the finding.

The errors specifically assigned are, that the Court erred in overruling the demurrer to the complaint.

That the Court erred in admitting improper testimony, over defendants' objection, and in refusing to award a new trial.

We cannot notice the irregularity in proceeding to the trial of the issues of fact before the issues of law were disposed of, and while the two paragraphs of the answer were unnoticed, as that is not assigned for error.

The decision of the Court in overruling the demurrer to the complaint was not excepted to, and therefore the question argued mostly, by counsel, is not properly before us. That question is, whether a stockholder in a joint stock corporation which has the power under its charter of increasing its capital-stock, has a right, upon such capital-stock being increased, to subscribe for and hold the new stock in proportion to his interest in the old. Or, in other words, whether the augmentation of the capital-stock is for the benefit of each stockholder in proportion to his stock. Such is the doctrine contended for by the appellee, and it seems to be sustained by the case of *Gray* v. *Portland Bank*, 3 Mass. R. 364; and Messrs. *Angell & Ames*, in their work on Corporations (§ 554, 5th ed.), refer to this case as a correct exposition of the law. On the other hand, it is contended that the stockholders have no vested right to subscribe for the new stock, upon such increase, but that the directors may permit any one to subscribe for the same, or put the same in market and sell it for a premium if they can; and especially can they do it, as is claimed, under the charter of the appellants.

Another question raised by the demurrer, and argued by counsel, is, whether the corporation would be liable in such case, or whether the directors or officers refusing to permit such subscription would be liable only in their individual and private capacity.

We shall not decide either of these questions, as we should be going beyond what is legitimately presented by the record to do so.

Exceptions were duly taken to the decision of the Court, overruling the motion for a new trial, and the evidence all set out. The ground upon which a new trial was asked was, that the finding was not sustained by the evidence, and that improper testimony had been received, over the appellants' objection. It appears by the bill of exceptions, that the plaintiff below, proved by one *John R. Nunemacher*, the plaintiff's son, that he demanded on behalf of his father, of the secretary of the company, the privilege of subscribing for sixty shares of the increased stock, and produced a check and note in payment therefor. The appellants objected to parol proof of the contents of the note and check, the names of the owners or makers, or the amount thereof, and pointed out the obvious objection, that the note and check were the best evidence of the contents thereof, no foundation having been laid for the introduction of parol testimony; but the Court overruled the objection, and the appellants excepted. Thereupon, the plaintiff proved by the witness, without producing the note or check, or accounting for their absence, that the check was for 700 dollars or 900 dollars—witness did not recollect which— and the note for 2,400 dollars. The check was drawn by *D. Reisinger & Son*, on a banking-house in *Louisville*—did not recollect what house it was. It was a good check— that is, the drawers were good. The note was made by the plaintiff and indorsed by *Wm. W. Weir* and by *Reisinger & Son*. Witness laid the note and check down on the counter before *Applegate*, the secretary of the company, but he, *Applegate*, did not pick them up. It further appears that the secretary told the witness to put the note in

May Term,
1858.

THE OHIO
INSURANCE
COMPANY
v.
NUNEMA-
CHER.

the "discount box," and when the company got money they would discount it, but he had not then looked at the note, and did not know whose it was. It further appears that the plaintiff's note, at four or six months, with *Reisinger & Son* and *Wm. W. Weir* as indorsers, would have been good at their counter for 3,000 or 4,000 dollars; and that a check by *Reisinger & Co.* on *Hunt* of *Louisville*, would have been treated as money. It further appears that, when the witness demanded the stock for his father, *Applegate*, the secretary, replied that he had no stock for Mr. *Nunemacher;* and also, that *Nunemacher* never offered any money, nor did any one for him.

This is all the testimony that seems to have any bearing on the subject of an offer by the plaintiff to pay for the stock.

We do not think that the statement of the secretary that he had no stock for Mr. *Nunemacher*, dispenses with the necessity on the part of *Nunemacher* to make such offer.

We think the Court below erred in admitting parol evidence of the contents of the note and check. The names of the makers and indorsers of the note, and the drawers of the check, and the respective amounts of each, are certainly substantial parts of the contents thereof.

It is suggested by counsel, that the papers were not of a character to be kept, and that the proof is not so much of their contents, as of their character for solvency, and amounts.

If the papers were not kept, but lost or destroyed, it would have been an easy matter to lay the proper foundation for the introduction of parol evidence of their contents. The objection is not to the introduction of parol evidence of the solvency of the makers or drawers, but to parol evidence showing who were the makers and drawers, and the amounts.

Without this evidence, we think there was not enough before the Court to sustain the finding. Strike that out, and all the evidence on the subject of the offer to pay by

May Term, 1858.

THE OHIO INSURANCE COMPANY v. NUNEMACHER.

the plaintiff is, that his agent produced a couple of papers and demanded the sixty shares of stock, proposing to pay therefor with the two papers or the proceeds thereof.

We conceive it to be extremely doubtful whether all the evidence introduced, sustains this part of the case. The witness is unable to state on whom the check was drawn, but it was on some banking-house in *Louisville;* nor does he recollect whether it was for 700 or 900 dollars. This uncertainty in human recollection and memory illustrates the propriety and necessity of adhering to the rule which requires the production of the best evidence, unless it be shown to be out of the power of the party to produce it. Bankers' checks are frequently taken and received as money, and in this case it is shown that a check by *Reisinger & Co.* on *Hunt* of *Louisville*, would be treated at the counter of the company as money. But it does not appear that this was drawn on *Hunt.* It might, for aught that appears, have been drawn on any other banking-house, and one with whom the company had no connection. It may have been a check that they would not receive as money, or otherwise, for any purpose. Again, it does not appear in whose favor the check was drawn, whether to the appellants, or some other person; nor whether, by its terms, it was negotiable and indorsed to her by some other payee. Neither does it appear to whom the note in question was payable. It is shown that a note of plaintiff, indorsed as this was, at four or six months, would be good at the counter of appellants; but it does not appear when this note was payable, and there is nothing before us from which we can infer that it was payable in six months or any other particular length of time.

It appears that some of the new stock subscriptions were paid in cash, some partly in cash and partly in notes to be discounted, and some entirely in notes to be discounted; but the above testimony does not show that the plaintiff offered to pay either in money, or to furnish for discount such notes as the corporation was receiving from others to be discounted and the proceeds applied in payment for stock.

*Per Curiam.* — The judgment is reversed with costs. Cause remanded for a new trial.

*W. T. Otto* and *J. S. Davis*, for the appellants.

*J. Collins*, for the appellee (1).

(1) Mr. *Collins* cited *Gray* v. *The Portland Bank*, 3 Mass. R. 364; *Union Bank* v. *McDonough*, 5 Louisiana R. 63; *The State* v. *The Bank of Columbus*, 10 Ohio R. 91; *Viner's Abr.* tit. Stocks, A.; 10 Johns. 484; 23 Pick. 168.